# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATOMEE HINTON,<br><br>    Plaintiff,<br><br>    v.<br><br>MIX, *et al.*,<br><br>    Defendants. | Case No. 1:24-cv-00960-KES-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO FILE FOURTH AMENDED COMPLAINT LODGED ON MAY 30, 2025<br>(ECF No. 25)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT IN PART PLAINTIFF'S MOTION FOR PERMISSION TO ASSERT ADDITIONAL CLAIMS<br>(ECF No. 24)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>**FOURTEEN (14) DAY DEADLINE** |

**I.    Procedural History**

Plaintiff Natomee Hinton ("Plaintiff") is a former state prisoner appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

On April 11, 2025, the Court screened the third amended complaint and issued findings and recommendations that this action proceed on Plaintiff's third amended complaint against: (1) Defendants Mix and Vang for excessive force in violation of the Eighth Amendment; (2) Defendants Vang, Giannini, and Baker for failure to protect in violation of the Eighth Amendment; (3) Defendants Mix and Vang for state law assault and battery; and (4) Defendant

1

1 Mix for state law intentional infliction of emotional distress. (ECF No. 18.) The Court further
2 recommended that all other claims be dismissed based on Plaintiff's failure to state claims upon
3 which relief may be granted. (*Id.*) Plaintiff filed objections on May 2, 2025. (ECF No. 19.)

4       On May 16, 2025, the assigned District Judge adopted the findings and recommendations
5 in part and granted Plaintiff thirty (30) days to file a fourth amended complaint to add a First
6 Amendment retaliation claim consistent with the Court's order. (ECF No. 20.) The District
7 Judge further ordered that if Plaintiff did not file a fourth amended complaint, the case would
8 proceed only on the cognizable claims identified in Plaintiff's third amended complaint. (*Id.*)

9       Currently before the Court are Plaintiff's notice of change of address, motion for
10 permission to assert two additional claims other than the First Amendment in the fourth amended
11 complaint, and lodged a fourth amended complaint, all filed May 30, 2025. (ECF Nos. 23–25.)

12 **II.    Motion to Assert Additional Claims**

13       In his motion, Plaintiff requests permission to assert additional claims for state tort
14 malicious prosecution and state tort negligence. (ECF No. 24.) Plaintiff also seeks to add
15 Defendant John Doe, who was the Warden at the time of the events in the fourth amended
16 complaint. Plaintiff states that he does not assert any new allegations other than the ones already
17 in the record. Although he did not separately identify these two state law torts as a claim and
18 cause of action in the third amended complaint, Plaintiff argues that he does allege facts in the
19 complaint that support such claims, and he further clarified the malicious prosecution claim in
20 part in his objections to the prior findings and recommendations. Plaintiff seeks that the entire
21 record be considered, including the proposed fourth amended complaint attached to his motion.
22 (*Id.*)

23       Having reviewed the proposed fourth amended complaint, the Court recommends that
24 Plaintiff's motion be granted, in part, based on the discussion below. The fourth amended
25 complaint is currently before the Court for screening.

26 **III.    Screening Requirement and Standard**

27       The Court is required to screen complaints brought by prisoners seeking relief against a
28 governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C.

§ 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## IV.   Plaintiff's Allegations

It appears Plaintiff has been released from custody. (ECF No. 23.) The events in the fourth amended complaint are alleged to have occurred while Plaintiff was incarcerated at Sierra Conservation Center ("SCC") in Jamestown, California. Plaintiff names as defendants: (1) M. Mix, CDCR Correctional Sgt.; (2) B. Giannini, Correctional Officer; (3) L. Vang, Correctional Officer; (4) C. Baker, Correctional Officer; and (5) John Doe, Warden. All defendants are employed at SCC and are sued in their individual capacities. John Doe is also sued in his official capacity. Plaintiff alleges as follows.

In claim 1, Plaintiff alleges excessive force in violation of the Eighth Amendment. On 4/24/24, Defendant Mix had Plaintiff hog tied and carried by his clothes improperly to a medical holding cell while Plaintiff's breathing was being disrupted. Once inside, non-defendant Officer Pastor II closed the door to block eye view of other inmates and free staff. While being carried,

Plaintiff was choking the words "I can't breathe" but ignored. Plaintiff was laid on his stomach face down in cuffs. Defendant Mix straddled Plaintiff and used Plaintiff's blue top to choke Plaintiff even more, disrupting Plaintiff's breathing while telling Plaintiff to shut up. Plaintiff continued to scream and cry but was struck multiple times in his face and told to shut up while attempting to get the sergeant to stop. Other officers such as Defendants Giannini, Vang, and Baker stood watching in aid of Defendant Mix's attack. Mix ordered officers to take Plaintiff's shoes/pants off and to pin Plaintiff's legs to his butt in a scissor position, which Defendant Giannini did until they were numb, as Plaintiff warmed around from all the different things happening at once.

The Warden was put on notice about Mix's constant excessive force allegations by other inmates before, around, and after this incident and still deliberately didn't do anything to train, discipline, fire, reprimand, or supervise Mix's outrageous behavior.

In claim 2, Plaintiff alleges failure to protect in violation of the Eighth Amendment. While Sgt. Mix punched and strangled Plaintiff, while straddling Plaintiff while Plaintiff's hands were cuffed behind his back, other officers such as Vang, Giannini, and Baker sat and watched the attack and didn't intervene as Sgt. Mix used excessive force against Plaintiff in a malicious manner and not to regain order of the facility. He told Plaintiff to shut up as Plaintiff cried and begged for help. They falsified incident reports of what occurred and left out the force Sgt. Mix used against Plaintiff and stated none was used. They had a job to intervene when watching another use excessive force against Plaintiff unlawfully.

The Warden was put on notice before April 2024, prior to Plaintiff's incident, and knew of or should have known of Mix's constant unreasonable use of excessive force through complaints before, during, and after this event from numerous inmates. There are also records of his numerous allegations alleging that he used force unlawfully and deliberately failed to train, fire, discipline, or reprimand Mix after becoming aware of his outrageous conduct, including Plaintiff's incident, many before and after, after which led Mix to assaulting another inmate with a total of 3–4 reported separate assaults in an approximately 90-day period. It is the Warden's duty to ensure and maintain a safe and assault free environment for inmates and correctional

1  officers, but he failed to discipline correctional officers, resulting in numerous excessive force
2  against inmates for no reason by multiple staff at SCC. Upon Plaintiff's return, Mix threatened
3  Plaintiff to round 2 of another assault, made fun of Plaintiff, harassed and humiliated Plaintiff
4  while following Plaintiff around the yard several months after Plaintiff's issue transpired, with no
5  cares or worries for any disciplinary action for his actions. The Warden did nothing to ensure the
6  safety of the inmate population from Mix or uses of excessive force by other officers.

7  In claim 3, Plaintiff alleges a state tort for assault and battery. Sgt. Mix personally
8  battered Plaintiff while Plaintiff laid in cuffs face down on the ground in Facility C medical
9  holding cell. Giannini crossed Plaintiff's legs to Plaintiff's butt in major pain until they were
10 numb. Plaintiff was screaming for help but no one came or assisted. Sgt. Mix started to strangle
11 Plaintiff with Plaintiff's blue top while telling Plaintiff to shut up as he straddled Plaintiff from
12 behind. Plaintiff screamed and cried that Plaintiff could not breathe. He struck Plaintiff multiple
13 times with his fist to Plaintiff's face as Plaintiff swarmed on the ground from the attack and all
14 the different things happening to him at once. Officers Vang, Giannini, and Baker stood
15 watching and aiding in Sgt. Mix's attack.

16 In claim 4, Plaintiff alleges a state tort for intentional infliction of emotional distress. On
17 4/24/24, Sgt. Mix took Plaintiff off camera to a room with no witnesses except his fellow officers
18 and choked and struck Plaintiff multiple times while strangling Plaintiff, humiliating Plaintiff
19 through his cries and screaming for help. He continually told Plaintiff to shut up as he struck
20 Plaintiff and choked Plaintiff, as Plaintiff told him he could not breathe, while straddling Plaintiff.
21 He told Plaintiff to clean up before he got medical saying whatever Plaintiff disclosed to
22 medical/admin would be Plaintiff's fate moving forward. But Plaintiff still told medical and
23 admin what Mix did to Plaintiff while he was present and that he battered Plaintiff for no reason.
24 Mix then falsified documents that got Plaintiff sent to Ad-seg and change of living conditions.
25 Plaintiff was found not guilty of the falsified RVR after being sent to High Desert State Prison
26 ("HDSP"), and Plaintiff was returned to SCC about 90 days later. While in Ad-seg, Plaintiff had
27 limited access to yard, recreation, rehabilitative programs/services, and no communications with
28 family or support system, leaving Plaintiff with a deteriorating mental health. Officers Vang,

5

Giannini, and Baker failed to help Plaintiff when they saw he was beaten by the supervisor.

When Plaintiff returned to SCC, Mix constantly antagonized Plaintiff and made jokes and threats to harm Plaintiff again, with great disregard for civilization or punishment, as he could do whatever he wanted, cursing at Plaintiff.

In claim 5, Plaintiff alleges retaliation in violation of the First Amendment. After Mix's attack on Plaintiff ceased and before he got medical, he told Plaintiff that whatever Plaintiff disclosed to medical/admin would be Plaintiff's fate moving forward, in an attempt to silence Plaintiff and not disclose what actually transpired. As an inmate Plaintiff has a First Amendment right to complain in CDCR through a 602 process, but in times of emergency nothing precludes reporting verbally, then following the 602 procedure. Upon medical arriving, Plaintiff was still crying and hysterical and told them that Mix beat Plaintiff and Plaintiff hadn't done anything wrong, while Mix was physically present. He then in return falsified a report to cover up what happened, stating Plaintiff battered him. That false report by Mix got Plaintiff re-housed in Ad-seg for months, which changed Plaintiff's living conditions.

In claim 6, Plaintiff alleges a state tort for malicious prosecution. On 4/24/24 Mix initiated an administrative proceeding against Plaintiff, false RVR disciplinary proceedings. Mix stated his intentions of Plaintiff telling anyone what occurred, when disclosing what occurred he proceeded with malice and without probable cause to falsify documents in an attempt to cover what happened, which got Plaintiff sent to Ad-seg and a RVR disciplinary process initiated. Plaintiff was later found not guilty of the falsified battery on a peace officer, when Plaintiff was released from Ad-seg and returned from Level IV HDSP back to SCC.

In claim 7, Plaintiff alleges a state tort for negligence. All Defendants breached their duty of care to ensure that Plaintiff wasn't beaten in custody and left with multiple injuries. They had an obligation to ensure malicious harm or excessive force against Plaintiff was not done in an unlawful manner, as they have a job to protect the inmate population and staff from any unwanton harm or injury, which could be prevented. All defendants had an obligation but failed to act on that obligation deliberately by standing and just watching and aiding in the attack.

///

6

The Warden knew before Plaintiff's injuries about violence occurring at SCC but failed to take steps to remedy it, resulting in Plaintiff's injury.  Plaintiff stated specific dates when he became aware of specifically Sgt. Mix's actions and potential staff misconduct, but took no action as he assaulted another inmate after Plaintiff and was still deployed on the yard upon Plaintiff's return months later, which led to more unlawful acts.  The Warden holds a duty to control the conduct of his employees to ensure their compliance with policy.

Mix knew what transpired on 4/24/24 in the Facility C medical holding cell and also knew that the falsified report with false allegations would get Plaintiff sent to Ad-seg and possibly a Level IV after the RVR was finalized, as he has been with the department for 30 years and was currently at the Sgt. rank.  This was an attempt to maliciously prosecute Plaintiff for wanting to exercise his First Amendment right to complain about what occurred on the morning of 4/24/24.

Plaintiff alleges he complied with the Government Claims Act within 6 months of the incident, claim #202402083 and it is still pending.

As injuries, Plaintiff suffered black eye, swollen temples, bruising on back and face, back pain, nerve damage, neck tenderness, lost consciousness, dizziness, among other injuries. Plaintiff alleges he has PTSD, anxiety, depression, separation from family, living conditions restricted, hardship, helplessness, hair loss, weight loss, medication.

As remedies, Plaintiff seeks compensatory and punitive damages.

**V.     Discussion**

**A.     Official Capacity**

Plaintiff is attempting to sue Defendant Warden John Doe in his official capacity, and is seeking only monetary relief.  Plaintiff may not pursue his claims for monetary damages against the named defendants in their official capacities.  "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." *Aholelei v. Dep't. of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted).  However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities, *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003), or suits for injunctive relief brought against state officials in their

7

official capacities, *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 680 n.2 (9th Cir. 1991). Thus, Plaintiff may only proceed in this action for monetary damages against defendants in their individual capacities.

### B. Linkage Requirement and Supervisory Liability

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Here, Plaintiff's complaint fails to link Defendant Warden John Doe to any wrongful conduct. Plaintiff alleges in a conclusory fashion that the Warden was put on notice about violence occurring at SSC, by Defendant Mix and other unspecified officers, by other inmates before, around, and after Plaintiff suffered his injuries, and still took no action to train, discipline, or supervise Defendant Mix or any other officers. While Plaintiff alleges that he stated specific dates when the Warden became specifically aware of Defendant Mix's actions, Plaintiff does not provide any of those specific dates or otherwise allege that the Warden was actually made aware of misconduct by Defendant Mix or any other officer.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). This is because, while factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969. Therefore, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to

8

relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).

Insofar as Plaintiff is attempting to sue Defendant Warden based on his supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir.2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

Here, Plaintiff has failed to establish that Defendant Warden participated in or directed any constitutional violation or that he implemented a policy so deficient that it was the moving force of any constitutional violation.

Further, a supervisor's failure to train subordinates may give rise to individual liability under Section 1983 where the failure amounts to deliberate indifference to the rights of persons with whom the subordinates are likely to come into contact. *See Canell v. Lightner*, 143 F.3d 1210, 1213-14 (9th Cir. 1998). To impose liability under this theory, a plaintiff must demonstrate the subordinate's training was inadequate, the inadequate training was a deliberate choice on the part of the supervisor, and the inadequate training caused a constitutional violation. *Id.* at 1214; *see also City of Canton v. Harris*, 489 U.S. 378, 391, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Lee v. City of Los Angeles,* 250 F.3d 668, 681 (9th Cir. 2001). Plaintiff has not alleged facts

demonstrating that Defendant Warden was deliberately indifferent to a need for more or different training.

**C.     Eighth Amendment**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

          1.     <u>Excessive Force</u>

For claims of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Relevant factors for this consideration include "the extent of injury . . . [,] the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 1078, 1085 (1986)). Although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates the Eighth Amendment, regardless of whether or not significant injury is evident. *Hudson*, 503 U.S. at 9–10; *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002).

Liberally construing the allegations, and considering the allegations as a whole, Plaintiff states a cognizable claim for excessive force against Defendant Sgt. Mix and Correctional Officer Giannini. Plaintiff fails to state a claim against the other defendants because it is not clear they engaged in force.

          2.     <u>Failure to Protect</u>

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners or others because being violently assaulted in prison is

simply not part of the penalty that criminal offenders pay for their offenses against society. *Farmer*, 511 U.S. at 833; *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir.2009); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 834, 841; *Clem*, 566 F.3d at 1181; *Hearns*, 413 F.3d at 1040.

Plaintiff states a cognizable failure to protect claim against Defendants Vang, Giannini, and Baker.

Plaintiff is informed that any claim premised on the failure to house Plaintiff at a particular institution or in particular housing fails because Plaintiff is not entitled to be housed in any particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976). In general, prison officials' housing and classification decisions do not give rise to federal constitutional claims encompassed by the protection of liberty and property guaranteed by the Fifth and Fourteenth Amendments. *Montayne v. Haymes*, 427 U.S. 236, 242 (1976) (It is well settled that prisoners have no constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment); *accord King v. Lemos*, No. 1:20-CV-01837-NONE-BAM (PC), 2021 WL 2038187, at *6 (E.D. Cal. May 21, 2021).

### D. First Amendment – Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–

68 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Adverse action taken against a prisoner "need not be an independent constitutional violation. The mere threat of harm can be an adverse action." *Watison*, 668 F.3d at 1114 (internal citations omitted). A causal connection between the adverse action and the protected conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred. *Id.* The filing of grievances and the pursuit of civil rights litigation against prison officials are both protected activities. *Rhodes*, 408 F.3d at 567–68. The plaintiff must allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." *Watison*, 668 F.3d at 1114. A plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution." *Id.*

Liberally construing the allegations in the fourth amended complaint, the Court finds that Plaintiff states a cognizable claim against Defendant Mix for retaliation in violation of the First Amendment.

### E.  State Law Claims

California's Government Claims Act[1] requires that a claim against the State[2] or its employees "relating to a cause of action for death or for injury to person" be presented to the Department of General Services' Government Claims Program no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2. Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit. *State v. Super. Ct. of Kings Cty. (Bodde)*, 32 Cal. 4th 1234, 1245 (Cal. 2004); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public entity

---

[1] This Act was formerly known as the California Tort Claims Act. *City of Stockton v. Superior Court*, 42 Cal. 4th 730, 741–42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

[2] " 'State' means the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller." Cal. Gov't Code § 900.6.

or employee, a plaintiff must allege compliance with the Government Claims Act. *Bodde*, 32 Cal. 4th at 1245; *Mangold*, 67 F.3d at 1477; *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988).

Plaintiff alleges that he complied with the California Government Claims Act.

### 1. Assault and Battery

Plaintiff alleges a state law claim for assault and battery. For a civil battery claim in California, a plaintiff must prove "(1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 526 (2009). Where the defendant is a peace officer, the plaintiff must also prove that the use of force was unreasonable. *Ransweiler*, 171 Cal. App. 4th at 526.

For an assault claim under California law, a plaintiff must show that (1) the defendant threatened to touch him in a harmful or offensive manner; (2) it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the harm. *Tekle v. U.S.*, 511 F.3d 839, 855 (9th Cir. 2007) (citation omitted).

At the pleading stage, Plaintiff's fourth amended complaint states cognizable state law claims against Defendants Mix and Giannini for assault and battery.

### 2. Intentional Infliction of Emotional Distress

Under California law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009) (quotation marks omitted); *Tekle v. United States*, 567 F.3d 554, 855 (9th Cir. 2007). Conduct is outrageous if it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Corales*, 567 F.3d at 571; *Tekle*, 511 F.3d at 855.

1 Liberally construing the allegations, Plaintiff states a cognizable claim for intentional infliction of emotional distress against Defendant Mix. Plaintiff alleges he was strangled and beaten while yelling he could not breathe and while handcuffed.

### 3. Malicious Prosecution

A claim for malicious prosecution or abuse of process is not generally cognizable under Section 1983 if a process is available within the state judicial system to provide a remedy. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) (citations omitted). The exception is "when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to denial of constitutional rights." *Id.* (citations omitted). In order to prevail on a Section 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) (citations omitted); *see also Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004); *Lacey v. Maricopa County*, 693 F.3d 896, 919 (9th Cir. 2012). Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed. *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1126–27 (9th Cir. 2002). Probable cause is an absolute defense to malicious prosecution. *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009).

In California, the elements of malicious prosecution are (1) the initiation of criminal prosecution, (2) malicious motivation, and (3) lack of probable cause. *Usher*, 828 F.2d at 562 (citing *Singleton v. Perry*, 45 Cal. 2d 489, 494 (1955).)

Plaintiff does not allege he was subject to criminal prosecution. While Plaintiff alleges that he was subject to disciplinary proceedings based on false evidence, which was done for the purpose of denying Plaintiff his rights under the First Amendment, the Ninth Circuit has not held that such prison disciplinary proceedings are sufficient for a malicious prosecution claim. Indeed, the Supreme Court has held that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."

*Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

### 4. Negligence

"The elements of a negligence cause of action are: (1) a legal duty to use due care; (2) a breach of that duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 534 (2009) (citing *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996)). As California does not recognize a separate tort for negligent infliction of emotional distress, a plaintiff may seek damages for emotional injury caused by a defendant's negligence. *See Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1125 (E.D. Cal. 2014); *Fiorito v. Anderson*, No. 5:18-CV-00506 JFW KES, 2019 WL 1602176, at *4 (C.D. Cal. Apr. 10, 2019), report and recommendation adopted, No. 5:18-CV-00506 JFW KES, 2019 WL 1596653 (C.D. Cal. Apr. 15, 2019).

Liberally construing the allegations, Plaintiff states a cognizable claim for negligence against Defendants Mix, Vang, Giannini, and Baker.

### F. False Reports

The creation of false evidence, standing alone, is not actionable under § 1983. *See Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison record has not been recognized); *Johnson v. Felker*, No. 1:12–cv–02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983.") (citations omitted). Moreover, "plaintiff cannot state a cognizable Eighth Amendment violation based on an allegation that defendant[ ] issued a false rule violation against plaintiff." *Jones v. Prater*, No. 2:10-cv-01381 JAM KJN P, 2012 WL 1979225, at *2 (E.D. Cal. Jun. 1, 2012); *see also Youngs v. Barretto*, No. 2:16-cv-0276 JAM AC P, 2018 WL 2198707, at *3 (E.D. Cal. May 14, 2019) (noting that issuance of false rules violation report does not rise to the level of cruel and unusual punishment) (citations omitted).

Accordingly, Plaintiff's complaint does not state a cognizable claim against any defendant for an allegedly falsified statement.

Deliberately providing false evidence that results in criminal charges or certain administrative penalties can give rise to a due process claim where there was a resulting deprivation of liberty. *Devereaux v Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (*en banc*) ("[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."). "To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (citations omitted). To establish the second element of causation, the plaintiff must show "that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question." *Spencer*, 857 F.3d at 798 (citations omitted).

The premise of a *Devereaux* claim is that Plaintiff was subject to a criminal prosecution and deprived of liberty. Plaintiff does not allege he was subject to criminal prosecution. While Plaintiff alleges that he was subject to disciplinary proceedings based on false evidence, and placed in administrative segregation as a result of fabricated evidence, the Ninth Circuit has not held that such prison disciplinary proceedings are sufficient for a *Devereaux* claim. Indeed, the Supreme Court has held that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The minimum Due Process procedural requirements that must be met in such proceedings are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Id.* at 563–71.

**G.   Doe Defendants**

Plaintiff names Warden John Doe as a defendant. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe.

**VI.   Order and Recommendations**

Based on the foregoing, the Court finds that Plaintiff's fourth amended complaint states cognizable claims against: (1) Defendants Mix and Giannini for excessive force in violation of the Eighth Amendment; (2) Defendants Vang, Giannini, and Baker for failure to protect in violation of the Eighth Amendment; (3) Defendant Mix for retaliation in violation of the First Amendment; (4) Defendants Mix and Vang for state law assault and battery; (5) Defendant Mix for state law intentional infliction of emotional distress; and (6) Defendants Mix, Vang, Giannini, and Baker for state law negligence.

Plaintiff's fourth amended complaint fails to state any other cognizable claims for relief against any other defendant. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies and further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Clerk of the Court is HEREBY DIRECTED to file the fourth amended complaint lodged on May 30, 2025, (ECF No. 25), as the operative complaint in this action.

Furthermore, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's motion for permission to assert additional claims, (ECF No. 24), be granted in part, as discussed above;
2. This action proceed on Plaintiff's fourth amended complaint against: (1) Defendants Mix and Giannini for excessive force in violation of the Eighth Amendment; (2) Defendants Vang, Giannini, and Baker for failure to protect in violation of the Eighth Amendment; (3) Defendant Mix for retaliation in violation of the First Amendment; (4) Defendants Mix and Vang for state law assault and battery; (5) Defendant Mix for state law intentional

infliction of emotional distress; and (6) Defendants Mix, Vang, Giannini, and Baker for state law negligence; and

3. All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

* * *

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 3, 2025**            /s/ Barbara A. McAuliffe        _
                                        UNITED STATES MAGISTRATE JUDGE